## IN THE UNITED STATES DISTRICT COURT FOR THE
## NORTHERN DISTRICT OF ILLINOIS

| | | |
|---|---|---|
| The Equal Rights Center, et al., | ) | |
| Plaintiffs, | ) | Case No: 14 C 8259 |
| | ) | |
| v. | ) | |
| | ) | Judge Ronald A. Guzmán |
| | ) | |
| Kohl's Corporation, et al., | ) | |
| Defendants. | ) | |

## MEMORANDUM OPINION AND ORDER

For the reasons stated below, Kohl's motion to strike class allegations and dismiss for lack of subject matter jurisdiction [15] is granted in part and denied in part. It is granted to the extent that Plaintiffs fail to demonstrate ascertainability of the class; the remainder is denied. Plaintiffs have 21 days to file an amended complaint. At the same time as the amended complaint is filed, Plaintiffs shall file a memorandum addressing how their revised class definition satisfies the Seventh Circuit's ascertainability requirement. Within 2 court days of the filing of the amended complaint and memorandum, Kohl's shall file a statement indicating whether they will move to strike the revised class allegations on ascertainability grounds. If they intend to move to strike, they will have 14 days after the filing of their statement in which to file a memorandum in support of the motion to strike and Plaintiffs will have 14 days thereafter to respond.

## STATEMENT

The Equal Rights Center ("ERC") and six individual plaintiffs sue Kohl's Corporation and Kohl's Department Stores, Inc. ("Kohl's") for violations of the Americans with Disabilities Act ("ADA") and the New York Human Rights Law ("NYHRL"). Title III of the ADA prohibits discrimination on the basis of disability by those who own or operate places of public

accommodation. *See* 42 U.S.C. § 12182(a). The relevant portion of the NYHRL makes it an "unlawful discriminatory practice" for any "place of public accommodation . . . because of the . . . disability . . . of any person, directly or indirectly, to refuse, withhold from or deny to such person any of the accommodations, advantages, facilities or privileges thereof." N.Y. Exec. Law § 296(2)(a) (McKinney 2015). Plaintiffs, who either have or represent individuals who have mobility disabilities and have allegedly encountered barriers at certain Kohl's stores, seek to represent a class defined as follows:

> [A]ll people with mobility disabilities who use wheelchairs or are otherwise disabled due to mobility-related issues, who were denied the full and equal enjoyment of the goods, services, facilities, privileges, advantages, or accommodations of any Kohl's Department Store in the United States on the basis of disability because of the presence of a narrow aisle, inaccessible sales or service counter, inaccessible merchandise display, inaccessible parking spaces, inaccessible fitting rooms, or inaccessible restrooms, among other barriers.

(Compl., Dkt. # 1, ¶ 63.)

**Standing**

Kohl's makes several standing challenges, which the Court addresses first. Kohl's argues that ERC lacks associational standing to assert claims for declaratory and injunctive relief under the ADA and the NYHRL. The Supreme Court has stated that:

> . . . an association has standing to bring suit on behalf of its members when: (a) its members would otherwise have standing to sue in their own right; (b) the interests it seeks to protect are germane to the organization's purpose; and (c) neither the claim asserted nor the relief requested requires the participation of individual members in the lawsuit.

*Hunt v. Wash. State Apple Adver. Comm'n*, 432 U.S. 333, 343 (1977). Kohl's acknowledges that ERC has adequately pled the first two elements but contends that the third element has not been met.

2

The Seventh Circuit has stated that:

> . . . while the third prong of the *Hunt* test requires that we conclude that "neither the claim asserted nor the relief requested requires the participation of individual members in the lawsuit," associational standing does depend "in substantial measure on the nature of the relief sought." Declaratory, injunctive, or other prospective relief will usually inure to the benefit of the members actually injured and thus individualized proof of damages is often unnecessary.

*Retired Chi. Police Ass'n v. City of Chi.*, 7 F.3d 584, 602-03 (7th Cir. 1993) (internal citations omitted).

Kohl's argues that "the ADA claim that ERC asserts necessarily requires evidence of what ERC is trying to enjoin, which can only come from the experience of its individual members." (Def.'s Reply, Dkt. # 24, at 12.) But, as the Seventh Circuit has recognized with respect to the third prong of the *Hunt* test, it could find no indication that "the Supreme Court intended to limit representational standing to cases in which it would *not* be necessary to take any evidence from individual members of an association." *Retired Chi. Police Ass'n*, 7 F.3d at 602 (emphasis added). It continued by concluding that "evidence might be supplied by the evidentiary submissions of some of the members" and that "[e]ach [member's] presence as a party would not be required." *Id.* Therefore, the Court rejects Kohl's assertion in its motion to dismiss that ERC lacks associational standing with respect to its claims for declaratory and injunctive relief.

ERC alleges organizational standing with respect to its claim for damages under the NYHRL. In determining whether a plaintiff organization has standing, the court "conduct[s] the same inquiry as in the case of an individual: Has the plaintiff 'alleged such a personal stake in the outcome of the controversy' as to warrant his invocation of federal-court jurisdiction?" *Havens Realty Corp. v. Coleman*, 455 U.S. 363, 378-79 (1982) (internal quotation marks and citations omitted). ERC

alleges that its "membership consists, in part, of persons with disabilities who live throughout the nation, and others who are committed to, inter alia, equal rights, equal access, and equal opportunity for persons with disabilities." (Compl., Dkt. # 1, ¶ 24.) It goes on to allege that it "pursues this goal through various means, including research, outreach and education, counseling, advocacy, and enforcement." (*Id*.)

According to ERC, it responded to specific complaints by individuals with disabilities that they had been denied access to certain Kohl's stores. (*Id*. ¶ 37.) As a result, ERC "diverted a portion of its scarce resources to perform accessibility surveys of Kohl's department stores, and to counseling individuals and members with complaints." (*Id*.) ERC further alleges that Kohl's failed to respond to "multiple requests by the Plaintiffs and their counsel to correct these issues," including several letters. (*Id*. ¶¶ 15, 17.) Thus, the complaint alleges, "[i]nstead of providing these services to its members and the community, the ERC has devoted resources to identifying and investigating Defendants' discriminatory policies and practices, attempting to contact Defendants to correct Defendants' discriminatory policies and practices, and to counseling individuals who have been denied access to Kohl's department stores." (*Id*. ¶ 113.) These allegations, assuming their truth and making all inferences in ERC's favor, are sufficient to support organizational standing. *Havens*, 455 U.S. at 379 ("If, as broadly alleged, petitioners' steering practices have perceptibly impaired HOME's ability to provide counseling and referral services for low-and moderate-income homeseekers, there can be no question that the organization has suffered injury in fact" because "[s]uch concrete and demonstrable injury to the organization's activities—with the consequent drain on the organization's resources—constitutes far more than simply a setback to the organization's abstract social interests").

Kohl's further argues that the Court must dismiss the complaint in its entirety or limit the

individual Plaintiffs' standing to the Kohl's stores discussed in the complaint. Kohl's is correct that "[t]he Article III standing inquiry remains the same even if the case is proceeding as a class action" and "even named plaintiffs who represent a class must allege and show that they personally have been injured." *Physicians Healthsource, Inc. v. Alma Lasers, Inc.*, No. 12 C 4978, 2015 WL 1538497, at *4 (N.D. Ill. Mar. 31, 2015) (internal quotations and citation omitted). According to Kohl's, because the individual Plaintiffs visited different Kohl's stores, each Plaintiff has not established standing with respect to the Kohl's stores they did not visit, citing to *Scherr v. Marriott Int'l, Inc.*, 703 F.3d 1069, 1074 (7th Cir. 2013). In *Scherr*, an individual plaintiff sued (on behalf of herself only, not a class), the Marriott hotel in which she was injured based on an alleged ADA non-compliant door. She also attempted to sue fifty-six other Marriott Hotels that had similar doors. The Seventh Circuit affirmed the district court's finding that the plaintiff did not have standing to sue the fifty-six other Marriott hotels in which she had not stayed because she "must assert an intent to return to the particular place (or places) where the violations are alleged to be occurring" and the plaintiff "ma[de] no such showing with regard to any of the other fifty-six Courtyard Marriotts." *Id*. at 1075. The inquiry ended there as the plaintiff was not seeking relief on behalf of a class.

Here, Plaintiffs, on behalf of themselves and a class, have alleged that they were injured due to Kohl's purported ADA violations and intend to continue to visit the stores where they encountered barriers. Thus, each Plaintiff has standing to sue Kohl's with respect to the stores they visited. Whether Plaintiffs may obtain nationwide prospective relief against all Kohl's stores on behalf of a class will be decided at the class certification stage. *Colo. Cross Disability Coal. v. Abercrombie & Fitch Co.*, 765 F.3d 1205, 1213 (10th Cir. 2014) ("The question whether an injunction [based on ADA violations] may properly extend to Hollister stores nationwide is answered by asking whether

[the individual plaintiff] may serve as a representative of a class that seeks such relief. All that is necessary to answer this question is an application of Rule 23.").

**Motion to Strike Class Allegations**

In addition to the challenges to standing, Kohl's argues that the class allegations should be stricken because class certification is inappropriate in this case. *Wright v. Family Dollar, Inc*., No. 10 C 4410, 2010 WL 4962838, at *1 (N.D. Ill. Nov. 30, 2010) ("Particularly given that Rule 23(c)(1)(A) instructs courts to determine whether a class may be certified '[a]t an early practicable time,' courts may – and should – address the plaintiff's class allegations when the pleadings are facially defective and definitively establish that a class action cannot be maintained.").

Kohl's first contends that Plaintiffs do not properly allege numerosity. To meet the numerosity requirement, Plaintiffs must establish that the class is so numerous that joinder is impracticable. Fed. R. Civ. 23(a). Plaintiffs allege that "[t]here are approximately 3.6 million individuals in the United States who have mobility disabilities and rely on the use of wheelchairs according to the 2010 Report from the United States Census Bureau." (Compl., Dkt. # 1, ¶ 64.) This statement is sufficient to allege numerosity. *Colo. Cross Disability Coal*., 765 F.3d at 1215 ("It was therefore reasonable to infer that a substantial number of disabled people live in the 40 states where Hollister stores are located; that these people, like CCDC members and many Americans, shop at malls, including the 250 malls with porched Hollisters; and that joining all of these people in one suit would be impracticable."); *Park v. Ralph's Grocery Co.*, 254 F.R.D. 112, 120 (C.D. Cal. 2008) ("Given that there are over 150,000 non-institutionalized people over 16 years of age in California who use wheelchairs, it is clear that a substantial number of people would be affected by defendant's alleged access barriers.").

Kohl's also contends that Plaintiffs cannot demonstrate commonality. To satisfy the commonality requirement of Rule 23(a)(2), a plaintiff must show that there are questions of fact or law that are common to all class members. This requirement is usually met where a class claim arises out of some form of standardized conduct by the defendant. *See, e.g., Keele v. Wexler*, 149 F.3d 589, 594 (7th Cir. 1998) ("Common nuclei of fact are typically manifest where . . . the defendants have engaged in standardized conduct towards members of the proposed class . . . ."). Here, Plaintiffs allege that Kohl's "maintain[s] policies and engage[s] in practices that result in department stores that are inaccessible to persons with disabilities." (Compl., Dkt. # 1, ¶ 1.) Specifically, Plaintiffs allege that "Kohl's relies on a 'unique store format' to promote both convenience and profitability" but which also "systematically den[ies] equal access to individuals with disabilities" due to its "common design features, policies, and practices." (*Id.* ¶¶ 4, 6, 12.) These allegations satisfy the commonality prong at this stage of the proceedings.

Kohl's citation to *Castaneda v. Burger King Corp.*, 264 F.R.D. 557, 567 (N.D. Cal. 2009) does not alter the Court's conclusion. In *Castaneda*, the Court denied class certification in part based on the failure to show commonality, noting that "[t]he lack of commonality with regards to access barriers across multiple facilities weighs heavily against class certification especially where, as here, there is no affirmative centralized plan calling for the alleged barriers at different stores." *Id*. The *Castaneda* court distinguished its facts from another ADA class action against a chain restaurant, *Moeller v. Taco Bell Corp.*, 220 F.R.D. 604, 605 (N.D. Cal. 2004), in which certification was granted. In *Moeller*, "Taco Bell conceded that all of the stores were built in accordance with centrally designed blueprints that resulted in common accessibility violations at all of the stores," while in *Castaneda*, "plaintiffs have sued defendant with respect to restaurants that defendant leased

7

to third-party operators who were required to obtain their own blueprints and construction plans and to contract independently for architectural and engineering services." *Id*. at 568. The *Castaneda* court concluded that "plaintiffs have failed to make the case that Burger King Corporation has any common offending policies or design characteristics that called for common accessibility barriers at different restaurants." *Id.* Here, however, Plaintiffs allege common designs based on a "unique store format." Accordingly, the Court cannot conclude at this stage that Plaintiffs will be unable to establish commonality.

Plaintiffs do not fare as well with respect to the issue of ascertainability, a challenge they hardly address. "Separate and apart from the requirements of Rule 23(a) and (b), the Seventh Circuit requires that 'a class must be sufficiently definite that its members are ascertainable.'" *Lacy v. Dart*, No. 14 C 6259, 2015 WL 1995576, at *2 (N.D. Ill. Apr. 30, 2015) (quoting *Jamie S. v. Milwaukee Pub. Sch.*, 668 F.3d 481, 493 (7th Cir. 2012)). A class is identifiable if its members can be ascertained by reference to objective criteria. *Lau v. Arrow Fin. Servs., LLC*, 245 F.R.D. 620, 624 (N.D. Ill. 2007). As an initial matter, Plaintiffs' proposed class definition does not include a time frame. Moreover, what are the objective criteria by which class membership will be determined and how will class members be identified? Another court in this district addressing alleged ADA violations as to jail detainees who used wheelchairs recently rejected the defendant's assertion that the class was not ascertainable, noting that "class members are easily identifiable through the Sheriff's 'CCOMS' computer system, which keeps track of each detainee who has been assigned a wheelchair." *Lacy*, 2015 WL 1995576, at *2. Here, the potential class numbers in the thousands and Plaintiffs do not indicate how they will identify the members of a nationwide class of mobility-impaired individuals who were, at some point, denied the full and equal enjoyment of the goods,

8

services, facilities, privileges, advantages, or accommodations of any Kohl's Department Store because of the presence of access barriers. In addressing ascertainability in the context of seeking injunctive relief based on the defendant's conduct, the Court refers Plaintiffs to the Seventh Circuit's position on the issue as stated in *Jamie S. v. Milwaukee Pub. Sch.*, 668 F.3d 481, 496 (7th Cir. 2012) (rejecting plaintiffs' contention that "because the class is defined by reference to [the defendant's] illegal actions – that is, by MPS's failure to comply with the IDEA – the defect of indefiniteness may be forgiven" and noting that past cases indicating "tolerance of a wildly indefinite class definition under Rule 23 is no longer the norm").

**Conclusion**

For the reasons stated above, Kohl's motion to strike class allegations and dismiss for lack of subject matter jurisdiction [15] is granted in part and denied in part. It is granted to the extent that Plaintiffs fail to demonstrate ascertainability of the class; the remainder is denied. Plaintiffs have 21 days to file an amended complaint. At the same time as the amended complaint is filed, Plaintiffs shall file a memorandum addressing how their revised class definition satisfies the Seventh Circuit's ascertainability requirement. Within 2 court days of the filing of the amended complaint and memorandum, Kohl's shall file a statement indicating whether they will move to strike the revised class allegations on ascertainability grounds. If they intend to move to strike, they will have 14 days in which to file a memorandum in support of the motion to strike and Plaintiffs will have 14 days thereafter to respond.

**Date**: June 3, 2015

**Ronald A. Guzmán**
**United States District Judge**