# IN THE UNITED STATES DISTRICT COURT FOR THE
# NORTHERN DISTRICT OF ILLINOIS

| | | |
|---|---|---|
| Equal Rights Center, et al., | ) | |
|     Plaintiffs, | ) | Case No: 14 C 8259 |
| | ) | |
| v. | ) | |
| | ) | Judge Ronald A. Guzmán |
| | ) | |
| Kohl's Corporation and Kohl's | ) | |
| Department Stores, Inc., | ) | |
|     Defendants. | ) | |
| | ) | |

## MEMORANDUM OPINION AND ORDER

For the reasons stated below, Defendants' motion to strike the class allegations and dismiss Count II [45] is denied.

## STATEMENT

Plaintiffs, on behalf of themselves and a putative class, seek to hold Kohl's Corporation and Kohl's Department Stores, Inc. (collectively, "Kohl's") liable for purported violations of the Americans with Disabilities Act ("ADA") and the New York Human Rights Law. The Court granted in part Kohl's first motion to strike the class allegations on the ground that Plaintiffs failed to properly allege ascertainability, and Plaintiffs were granted leave to file an amended complaint. Kohl's again seeks to strike the class allegations and dismiss Count II of the amended complaint, which alleges violations of the Americans with Disabilities Act ("ADA") based on alleged inaccessible counters, restrooms, fitting rooms, and inadequate accessible parking.

The Court assumes knowledge of the background facts of this case and the Court's prior order. Plaintiffs' revised class definition states as follows:

> All people with mobility disabilities who relied on wheeled mobility devices for mobility who, during the 12 months immediately prior to the filing of the Complaint in this case, were denied access to the goods, services, facilities, privileges, advantages, or accommodations of any Kohl's Department Store in the United States on the basis of disability because of the existence of aisles which were too narrow (less than 36 inches).

(Am. Compl., Dkt. # 42, ¶ 63.)

Ascertainability

Kohl's again moves to strike the class allegations on ascertainability grounds. In a recent opinion, *Mullins v. Direct Digital, LLC*, No. 15 C 1776, 2015 WL 4546159 (7th Cir. July 28, 2015), the Seventh Circuit clarified the ascertainability requirement in this circuit:

> We and other courts have long recognized an implicit requirement under Rule 23 that a class must be defined clearly and that membership be defined by objective criteria rather than by, for example, a class member's state of mind. In addressing this requirement, courts have sometimes used the term "ascertainability." They have applied this requirement to all class actions, regardless of whether certification was sought under Rule 23(b)(1), (2), or (3). Class definitions have failed this requirement when they were too vague or subjective, or when class membership was defined in terms of success on the merits (so-called "fail-safe" classes). This version of ascertainability is well-settled in our circuit, and this class satisfies it.
>
> More recently, however, some courts have raised the bar for class actions under Rule 23(b)(3). Using the term "ascertainability," at times without recognizing the extension, these courts have imposed a new requirement that plaintiffs prove at the certification stage that there is a "reliable and administratively feasible" way to identify all who fall within the class definition. These courts have moved beyond examining the adequacy of the class definition itself to examine the potential difficulty of identifying particular members of the class and evaluating the validity of claims they might eventually submit. *See Byrd v. Aaron's Inc.*, 784 F.3d 154, 168 (3d Cir. 2015) (distinguishing between our circuits standard and the Third Circuit's ascertainability requirement).
>
> We decline to follow this path and will stick with our settled law. Nothing in Rule 23 mentions or implies this heightened requirement under Rule 23(b)(3), which has the effect of skewing the balance that district courts must strike when deciding whether to certify classes. The policy concerns motivating the heightened ascertainability requirement are better addressed by applying carefully the explicit requirements of Rule 23(a) and especially (b)(3). These existing requirements already address the balance of interests that Rule 23 is designed to protect. A court must consider "the likely difficulties in managing a class action," but in doing so it must balance countervailing interests to decide whether a class action "is superior to other available methods for fairly and efficiently adjudicating the controversy." *See* Fed. R. Civ. P. 23(b)(3).

*Id.* at *1-2.

At this preliminary stage of the proceedings, the Court is unwilling to conclude that Plaintiffs' narrowed definition must be stricken at this time. While the Court had concerns about

2

the ability to locate and identify class members, the *Mullins* court made clear that Rule 23 "does not insist on actual notice to all class members in all cases" rather "[i]t recognizes it might be impossible to identify some class members for purposes of actual notice." *Id*. at *9.

Indeed, the *Mullins* court clarified that:

> In addition, a district judge has discretion to (and we think normally should) wait and see how serious the problem may turn out to be after settlement or judgment, when much more may be known about available records, response rates, and other relevant factors. And if a problem is truly insoluble, the court may decertify the class at a later stage of the litigation.

*Id.* at *8.

While additional information, criteria, or procedures may be required of Plaintiffs at the class certification stage, at this time, the Court declines to strike Plaintiffs' class allegations.

Count II

Kohl's moves to dismiss Count II to the extent that Plaintiffs and ERC do not allege they suffered violations of the ADA. In Count II, Plaintiffs pursue individual claims for relief for violations of the ADA "due to inaccessible counters, restrooms, fitting rooms, and inadequate accessible parking." Kohl's contends that because each Plaintiff does not allege that she encountered each type of obstruction (*i.e.*, an inaccessible counter, restroom or fitting room, or inaccessible parking), then the claims should be dismissed as to those violations which each Plaintiff did not encounter. However, a "plaintiff's claim is not limited to the barriers of which he has personal knowledge or that he personally encountered." *DeBoard v. Comfort Inn*, 1:13-CV-00508-RLY, 2013 WL 5592418, at *2 (S.D. Ind. Oct. 9, 2013) ("An ADA plaintiff who has Article III standing as a result of at least one barrier at a place of public accommodation may, in one suit, permissibly challenge all barriers in that public accommodation that are related to his or her specific disability.") (quoting *Doran v. 7-Eleven, Inc*., 524 F.3d 1034, 1047 (9th Cir. 2008)).

Kohl's also argues that ERC's claims on behalf of its members should be dismissed because ERC does not allege that its members, other than Plaintiffs, have standing. Specifically, Kohl's asserts that ERC lacks associational standing. However, an association "has standing to assert the . . . rights of its members in [the relevant matter] because the association was created to advocate its members' views on this matter." *Naperville Smart Meter Awareness v. City of Naperville*, No. 11 C 9299, 2013 WL 1196580, at *5 (N.D. Ill. Mar. 22, 2013). Plaintiffs allege that:

> The ERC's membership consists, in part, of persons with disabilities who live throughout the nation, and others who are committed to, inter alia, equal rights, equal access, and equal opportunity for persons with disabilities. The ERC

3

> pursues th[ese] goal[s] through various means, including research, outreach and education, counseling, advocacy, and enforcement.

(Am. Compl., Dkt. # 42, ¶ 24.) Based on this allegation, the Court denies Kohl's motion to dismiss on this ground.

**Date**: October 7, 2015

_____
**Ronald A. Guzmán**
**United States District Court**

4